IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTORIA L. BOHLIN, | | |
| Plaintiff, | No. CIV S-10-1790 DAD | |
| vs. | | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ORDER | |
| Defendant. | | |
| _____/ | | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

On March 13, 2008, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on December 31, 2007 due to a brain tumor, a herniated disc, heart disease and hypertension. (Transcript ("Tr.") at 118-121, 129-30.) Plaintiff's application was denied initially on July 11, 2008, and upon reconsideration on October 20, 2008. (Id. at 81-90.) A hearing was held before

an Administrative Law Judge (ALJ) on September 9, 2009.  (Id. at 39-73.)  Plaintiff was represented by a non-attorney representative and testified at the administrative hearing.  In a decision issued on December 8, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 30-38.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: the claimant is status post brain surgery in 1995, and status post right hip hemiarthroplasty in December 2008.  (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c), from her alleged onset date of December 31, 2007 to December 17, 2008, when she is limited to light exertion based upon her right hip fracture.
>
> 6. The claimant is capable of performing her past relevant work as a security manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2007 through the date of this decision (20 CFR 404.1520(f)).

(Id. at 13-18.)

On May 11, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 9, 2010.

/////

/////

2

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed the following two principal errors in finding her not to be disabled: (1) the ALJ erred in finding that plaintiff's depression, memory impairments, cognitive dysfunction and headaches were not severe impairments; and (2) the ALJ improperly rejected plaintiff's own testimony regarding her subjective complaints and functional limitations without legitimate or germane reasons for so doing.

The court agrees that the ALJ erred in finding that plaintiff's depression, memory impairments, cognitive dysfunction and headaches were not severe impairments. The ALJ's findings of fact in this regard are not supported by substantial evidence, and the proper legal standards were not applied in making that finding.

At step two of the sequential evaluation process, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). Under the

4

1  Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it
2  does not significantly limit [the claimant's] physical or mental ability to do basic work
3  activities." 20 C.F.R. § 404.1521(a). Basic work activities encompass "the abilities and
4  aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing,
5  sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3)
6  understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5)
7  responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing
8  with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

9  "The severity regulation increases the efficiency and reliability of the evaluation
10 process by identifying at an early stage those claimants whose medical impairments are so slight
11 that it is unlikely they would be found to be disabled even if their age, education, and experience
12 were taken into account." Yuckert, 482 U.S. at 153. "Step two, then, is 'a de minimis screening
13 device [used] to dispose of groundless claims[.]'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir.
14 2005) (quoting Smolen, 80 F.3d at 1290). See also Edlund v. Massanari, 253 F.3d 1152,
15 1158-59 (9th Cir. 2001). "An impairment or combination of impairments may be found 'not
16 severe only if the evidence establishes a slight abnormality that has no more than a minimal
17 effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at
18 1290).

19 Here, the ALJ found that plaintiff's medical records did not document evidence
20 that her memory impairment, depression, cognitive dysfunction and headaches were severe,
21 either singly or in combination, or document that the combination of the these symptoms was
22 equivalent to a severe impairment. (Tr. at 35.)

23 On August 13, 2008, Dr. Howard Krauss, Clinical Professor of Ophthalmology
24 and Neurosurgery at UCLA and plaintiff's treating physician, issued a Narrative Report detailing
25 plaintiff's medical history and impairments. Dr. Krauss stated:
26 /////

[Plaintiff] was referred for consultation and seen by me on June 20, 1995. She complained of several months of blurred vision, ocular irritation and bulging. Neuroimaging had revealed bilateral sphenoid ridge brain tumors. Examination findings revealed evidence of bilateral proptosis and compressive optic neuropathy. Ultrasound-guided Fine Needle Aspiration Biopsy was carried out, with findings consistent with meningioma, for which she underwent two consecutive craniotomies (June 26 and August 10, 1995) for tumor excision. Postoperative problems included bilateral enophthalmos and partial 3rd cranial nerve palsy with consequent diplopia.

In 1996 she underwent brain and skull radiotherapy to reduce the risk of tumor regrowth.

On November 21, 1996 she underwent left strabismus repair and right canaliculoplasty.

On March 9, 1999 she underwent left conjunctivoplasty, correction of left lower eyelid retraction and right canaliculoplasty.

On January 22, 2001 she underwent left upper eyelid reconstruction.

On July 6, 2004 she noted "very bad headaches," occasional dizziness when standing or getting up, as well as feeling "spacey." The dizziness was both lightheadedness and vertiginous, and occasionally accompanied by nausea.

On November 8, 2006 she noted that she was rear-ended in a motor vehicle accident a few weeks prior. She also complained of several months of blurry vision. She noted that standing led to lightheadedness and that she sometimes had fallen down. She noted headaches, which included sinus pressure and sometimes like a migraine.

On January 31, 2008 she noted reduced vision, discomfort driving at night, with glare symptoms. She also noted memory problems which had been worsening. She also noted worsening headaches over the preceding year, up to four-five times per week.

MRI revealed bilateral encephalomalacia, with frontal and temporal lobe atrophy, in addition to moderate extensive micronangiopathic ischemic changes.

Neurologic consultation noted: headaches, memory and cognitive issues, depression, confusion, decreased hearing A.D. and tinnitus AD.

[Plaintiff] has been disabled and unable to work since November 6, 2006. The prognosis is poor, with likely progressive cognitive

|   |   |
|---|---|
| 1 | decline secondary to previous brain tumors, surgeries and radiation, with resultant encephalomalacia, brain atrophy and microangiopathic changes. |

(Tr. at 314-15.)

Dr. Krauss also completed a Vision Impairment Questionnaire that noted that plaintiff suffered from headaches, memory loss and cognitive decline and was "unable to perform work functions." (Id. at 319-20.) Moreover, on August 27, 2009, Dr. Krauss completed a Headaches Impairment Questionnaire that noted that plaintiff had headaches, photosensitivity, an inability to concentrate, visual disturbances, memory and cognitive dysfunctions and indicated that he expected a "progressive decline in [her] memory and cognition." (Id. at 450.)

Nonetheless, the ALJ gave "little evidentiary weight" to the opinion of Dr. Krauss, plaintiff's treating physician. (Id. at 35.) The ALJ claimed that Dr. Krauss, "did not cite objective findings that relate to functional limitations and restrictions assessed; and his findings appear to be based upon the claimant's recitation of her subjective complaints." (Id.) In his August 13, 2008 Narrative Report however, Dr. Krauss referred to the findings of a February 12, 2008 MRI that "revealed bilateral encephalomalacia, with frontal and temporal lobe atrophy, in addition to moderate extensive microangiopathic ischemic changes" and to a February 21, 2008 neurologic consultation. (Id. at 315.) That neurologic consultation noted that plaintiff suffered from "depression, memory deficits, [and] confusion," and concluded that plaintiff had "slowly progressive memory and cognitive dysfunction." (Id. at 324-25.) The court finds that in light of this evidence of record, it was not the case that Dr. Krauss' August 13, 2008 opinion failed to cite objective findings relating to plaintiff's functional limitations and the restrictions assessed, or that his findings were based upon plaintiff's recitation of her subjective complaints as found by the ALJ.

The ALJ also rejected Dr. Krauss' opinion because "he did not examine the claimant at the time of his statements," which the ALJ interpreted as an indication that "his findings were an accommodation" to plaintiff to assist her in her disability claim, "rather than for

treatment." (Id. at 35.) An ALJ may consider a claimant's lack of credibility and the extent to which a physician's opinion is influenced by the claimant's own information. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). However, while the ALJ "may introduce evidence of actual improprieties," the ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." Lester, 81 F.3d at 832. See also Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998). Indeed, such "skepticism of a treating physician's credibility flies in the face of clear circuit precedent." Reddick, 157 F.3d at 726. Here, the ALJ did not point to any evidence of impropriety on the part of Dr. Krauss. Rather, the ALJ appears to have improperly assumed that Dr. Krauss' opinion was influenced by a desire to advocate on plaintiff's behalf. Moreover, as noted above, Dr. Krauss' opinion was in fact based in large part on objective findings.

Finally, while discrediting Dr. Krauss' opinion, the ALJ gave "significant evidentiary weight" to the opinion of an examining physician, Dr. Concepcion A. Enriquez, found in a June 19, 2008 Internal Medicine Consultation. (Tr. at 36.) However, Dr. Krauss was plaintiff's treating physician and had been treating plaintiff for over thirteen years when he rendered his August 13, 2008 opinion. See Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the

patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). See also Reddick, 157 F.3d at 725 ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant."). In this regard, a treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. Here, in rejecting Dr. Krauss' opinion the ALJ failed to state specific and legitimate reasons supported by substantial evidence in the record as was required.

Finally, the ALJ also rejected the opinion of Dr. Bruce Thompson, an examining physician, found in an August 10, 2009 impairment evaluation. (Tr. at 37.) Dr. Thompson concluded that:

> Due to her neurological and mental and cognitive defects, complicated by major depressive disorder, [plaintiff] is unable to sustain any gainful employment.

(Id. at 440.)

The ALJ gave "[n]o weight" to Dr. Thompson's conclusions, finding them:

> speculative, based on claimant's subjective report of her symptoms, and . . . not supported by any clinical findings, or the results of any accepted psychological or neurological testing.

(Id. at 37.) Dr. Thompson's conclusion, however, was based on a review of plaintiff's medical records, which included the results of a neurology consultation, an MRI, a neural ophthalmology consultation, and an Echocardiogram, as well as a Dr. Thompson's own physical examination of plaintiff, which included "[c]erebellar test, such as Romberg," testing of plaintiff's "[n]eurosensory function," and cranial nerves. (Id. at 439.)

In this regard, the court finds that it is not evident that Dr. Thompson's August 10, 2009 opinion was speculative, based on plaintiff's subjective report of her symptoms, or not

supported by any clinical findings or the results of any accepted psychological or neurological testing.

The administrative record before the court provides extensive evidence that plaintiff suffers from depression, cognitive dysfunction, headaches and memory impairments that significantly limit her ability to do basic work activities. Accordingly, the ALJ erred in finding that plaintiff's depression, memory impairments, cognitive dysfunction and headaches were not severe impairments. In reaching this conclusion, the undersigned is mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). See also Edlund, 253 F.3d at 1158. The court cannot find that plaintiff's depression, cognitive dysfunction, headaches and memory impairments are "not severe" because the evidence of record does not establish that her impairments are merely slight abnormalities having no more than a minimal effect on her ability to work. Certainly, this is not an instance in which a finding of no impairment at step two of the sequential evaluation process was justified by a total absence of objective evidence of a severe impairment or where even a claimant's own doctor was hesitant to conclude that the condition in question was legitimate. See Webb, 433 F.3d at 688. Here, the ALJ's determination with respect to plaintiff's depression, cognitive dysfunction, headaches and memory impairments is unsupported by substantial evidence in the record as a whole and must be reversed.

"[A]djudication must continue through the sequential evaluation process." SSR 85-28, 1985 WL 56856, at *3. Remand is therefore required in this case so that the ALJ can proceed beyond step two of the sequential evaluation process with respect to plaintiff's severe impairments. See Webb, 433 F.3d at 688 (remanding for further proceedings where "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that Webb's claim was 'groundless'").

/////

/////

**CONCLUSION**

In light of the remand required by the ALJ's error at step two, the court need not address plaintiff's remaining argument. See Sanchez v. Apfel, 85 F. Supp.2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility."). Moreover, the record is not sufficiently developed for consideration of those arguments in this case at the present time. Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

On remand, the ALJ shall recognize plaintiff's depression, cognitive dysfunction, headaches and memory impairments as severe at step two of the sequential evaluation process and proceed with the sequential analysis. The effect of plaintiff's impairments shall be carefully considered in conjunction with her physical impairments. The medical opinions shall be given proper weight, and the subjective testimony of plaintiff shall be considered in keeping with the applicable legal standards. Plaintiff's residual functional capacity shall be reconsidered in light of all of plaintiff's impairments and the entire record. If the sequential evaluation proceeds to step five, the ALJ shall hold a new hearing at which plaintiff testifies and hypothetical questions are presented to a vocational expert in a manner that properly takes into account all of the limitations on plaintiff's ability to engage in work-related functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was necessary because the claimant suffered from a severe mental impairment).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's November 22, 2010 motion for summary judgment (Doc. No. 12) is granted;

/////

2. Defendant's December 20, 2010 cross-motion for summary judgment (Doc. No. 13) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: September 28, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.socsec/bohlin1790.order